```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
  MICHAEL L. PHILLIPS,                                      :
                                 Plaintiff,                 :    MEMORANDUM DECISION
                                                            :    AND ORDER
                - against -                                 :
                                                            :    20-cv-5957 (BMC)
  COMMISSIONER OF SOCIAL SECURITY,                          :
                                                            :
                                 Defendant.                 :
                                                            :
----------------------------------------------------------- X
```

**COGAN, District Judge.**

1.  Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not "disabled" as defined in the Social Security Act and its regulations for purposes of qualifying for disability benefits. The ALJ found that notwithstanding severe impairments of a right shoulder disorder, spine disorder, and obesity, plaintiff could perform "light work," see 20 C.F.R. 404.1567(b), as long as the light work did not require any climbing of ropes, scaffolds or ladders; only occasional climbing of ramps and stairs; only occasional stooping, crouching, balancing, kneeling or crawling; no overhead reaching with his right arm; and frequent (as opposed to constant) reaching in all other directions with his right arm. Because a vocational expert testified that there are light work jobs in the national economy that accommodate these restrictions, the ALJ found plaintiff not disabled.

2.  In this review proceeding, plaintiff raises two broad points of error: (1) the ALJ failed to properly evaluate and develop the record in assessing plaintiff's residual

functional capacity; and (2) the ALJ failed to properly evaluate plaintiff's subjective statements. I agree with plaintiff's first argument and therefore need not reach the second.

3. Plaintiff's prior work was as an Emergency Medical Technician, classified as a "heavy work" job. Plaintiff's primary impairment stems from an on-the-job injury to his right shoulder. He claims benefits from an onset date of September 12, 2017, the date on which he had surgery to fix his shoulder. His complaint is that despite the surgery, he has continuing limitation of motion in that shoulder and pain that renders him disabled.

4. The basis of plaintiff's first point of error is that, since the ALJ did not completely accept the conclusions of either of two post-surgical medical professionals – plaintiff's treating orthopedic surgeon, Dr. Pushp R. Bhansali, or the state agency non-examining medical consultant, Dr. R. Abueg – then the ALJ must have come up with his own medical opinion not based on the evidence.

5. Dr. Bhansali performed plaintiff's shoulder surgery and there are regular post-surgical progress notes showing some improvement and some continuing deficits. The ALJ found Dr. Bhansali's assessment of plaintiff in the treatment notes to be "unpersuasive," citing one of the notes near the end of plaintiff's treatment commenting that "[p]atient can take the pain medication when he needs to. The patient can now be scheduled for loss of use of the right shoulder to 45% because of the pain, stiffness and marked limitation in range of motion of the right shoulder." Dr. Bhansali also observed in the same treatment note that "[n]o further improvement is expected."

6. The ALJ referred to the progress note quoted above as an "opinion" of Dr. Bhansali, and in the literal sense it is, but it is certainly not the kind of medical source

2

statement that the Court is used to seeing in these cases. As the ALJ pointed out, it contains no description of the functional limitations imposed on plaintiff by reason of his impairments. The ALJ described the quoted statement as "conclusory" and "vague", and noted that it "concerns standards of disability [i.e., workers compensation standards] that are different from those the Social Security Administration uses."

7. Plaintiff seems to concede in this proceeding that Dr. Bhansali's progress note has its limits because other than confirming that plaintiff had reduced range in his shoulder and some pain, it doesn't shed any light on what plaintiff could or could not do functionally. There also doesn't seem to be any dispute that Dr. Bhansali's progress note was directed at the question of whether plaintiff could resume his work as an EMT. Plaintiff's point, however, is that since the record is insufficient to show precisely what functional activities plaintiff can tolerate, the ALJ should have gone back to Dr. Bhansali, or some other examining provider, and tried to obtain a more specific functional opinion. As plaintiff states, "[w]ithout such an opinion, the ALJ could not conclude that plaintiff can perform lightwork with restrictions."

8. Plaintiff also criticizes the ALJ's reliance on the opinion of Dr. Abueg. Dr. Abueg concluded that plaintiff was not disabled because he could do light work. Unlike Dr. Bhansali, he gave a functional analysis of plaintiff's impaired right shoulder, e.g., plaintiff could lift 20 lbs. occasionally and 10 lbs. frequently; work hand and foot controls; and stand or walk for 6 hours in an 8-hour workday. Dr. Abueg further found that plaintiff was subject to the limitations that the ALJ subsequently adopted in assessing plaintiff's RFC.

9. The ALJ considered Dr. Abueg's opinion "persuasive" to the extent Dr. Abueg found that plaintiff could undertake "light exertion with limited right upper extremity reaching." The ALJ found that consistent with "objective findings of right shoulder limitations and degenerative disc disease." But the ALJ found the opinion "vague" as to plaintiff's ability to perform work-related tasks, and that Dr. Abueg failed to consider plaintiff's obesity and subjective complaints.

10. Plaintiff objects to the ALJ's finding that Dr. Abueg's opinion was at least partially persuasive. He points to the fact that Dr. Abueg is a pediatrician, hardly a specialty that is relevant here, and that because Dr. Abueg never examined plaintiff, his opinion cannot constitute substantial evidence by itself. Plaintiff also complains that Dr. Abueg did not identify the medical evidence upon which he based his opinion.

11. Plaintiff's objections are well-founded. The ALJ's "partially persuasive" characterization of Dr. Abueg's opinion doesn't add up in light of the ALJ's criticism of the opinion. Specifically, because the ALJ found that Dr. Abueg was "vague" as to plaintiff's ability to perform work related tasks, there is nothing else in the opinion justifying Dr. Abueg's conclusion that plaintiff could perform light exertion jobs with right arm restrictions.

12. There was never any serious question on this record that plaintiff has range impairments on his right arm; the question was how bad is it? Once the ALJ excluded Dr. Abueg's functional analysis ("specific work-related tasks," as the ALJ referred to it), there is nothing left in Dr. Abueg's opinion that supports his conclusion.

13. The ALJ attempted to accommodate this inconsistency by adding on the dynamic restrictions contained in his decision. But again, other than Dr. Abueg's

4

functional analysis, which the ALJ found vague, the record merely establishes the fact of a limited range of motion in plaintiff's right shoulder. Nothing in the record addresses the degree of impairment – the central issue in this case.

14. In addition, plaintiff is correct that Dr. Abueg may have been missing critical records in reaching his "partially persuasive" conclusion; we just don't know. Dr. Abueg requested Dr. Bhansali's records on June 20, 2018 and again on July 3, 2018. The latter date was the day after Dr. Abueg signed his opinion, so if the SSA received any records based on that request, Dr. Abueg did not consider them. And the progress note cited by the ALJ (quoted above), was dated only two weeks before Dr. Abueg's June 20, 2018 request, so it is unclear whether Dr. Abueg had that progress note when he signed off on his opinion on July 2, 2018.

15. I also accept the limitations that the case law places on a non-examining consultant like Dr. Abueg. See Hidalgo v. Bowen, 822 F.2d 294, 297 (2d Cir. 1987). Dr. Abueg was a non-examining medical consultant at the initial determination level, and the law is clear that such an opinion should be viewed with some skepticism, especially because he may not have reviewed the entirety of the record. See West v. Berryhill, No. 17-cv-1997, 2019 WL 211138, at *5 (D. Conn. Jan. 16, 2019). In addition, Dr. Abueg's pediatric specialty doesn't lend any weight to his opinion.

16. The ALJ referenced, and rejected, the other medical evidence in the record. For example, he pointed to an independent medical examination performed by orthopedist Dr. Carl Wilson at the request of the Workers Compensation Board about seven months after plaintiff's shoulder surgery. The ALJ rejected Dr. Wilson's conclusions that plaintiff could return to work as an EMT without any restrictions and

that the degree of disability was "none." The ALJ found Dr. Wilson's opinion "not persuasive" considering Dr. Wilson's inconsistent finding that plaintiff "still lacks a range of motion" and had only a "fair" prognosis. The ALJ's rejection of Dr. Wilson's opinion on these grounds is sound and of course plaintiff does not challenge it in this review proceeding.[1]

17. What we are left with, then, is virtually no medical evidence on plaintiff's post-surgical degree of impairment or RFC except Dr. Abueg's "partially persuasive" opinion, which, as explained above, does not constitute substantial evidence.

18. The Commissioner's response is strained and relies in part on evidence that the ALJ rejected. For example, she relies heavily on Dr. Wilson's opinion that plaintiff could return to work, which, as noted above, the ALJ rejected. She also asserts that according to Dr. Wilson's report, plaintiff told Dr. Wilson that he had attempted to return to work after his surgery but had been fired for sleeping in the ambulance – a contention that the Commissioner also relies upon heavily. However, the ALJ noted that this statement conflicted with what plaintiff had told Dr. Bhansali (plaintiff "was terminated because he could not continue"). The ALJ, upon reviewing the conflict, resolved it in plaintiff's favor: "[V]iewing the evidence in the light most favorable to the claimant, the undersigned finds that this work constituted an unsuccessful work attempt" – a finding that could not be made if plaintiff had been fired for cause. The Commissioner cannot expect this Court to make a factual finding contrary to that of the ALJ when there is evidence in the record pointing both ways.

---

[1] The ALJ focused almost entirely on plaintiff's post-surgical treatment records and evaluations. That was proper since plaintiff's shoulder surgery in September 2017 clearly reset the table in determining his RFC.

19. The Commissioner's main legal point is that the ALJ did not have to rely on the medical evidence, but could rely on the record as a whole, *i.e.*, medical and non-medical evidence. The Commissioner points to the ALJ's observation that even based on Dr. Bhansali's progress notes, plaintiff had some improvement in his range of motion. However, this again begs the question of whether the improvement was sufficient to allow him to perform light work with restrictions.

20. The Commissioner also asserts that there is circumstantial evidence that supports the ALJ's conclusion: (1) on sustaining the injury to his shoulder, plaintiff did not seek orthopedic treatment for nearly a year; continued to work; and rejected his doctor's recommendation shortly after his injury that he have shoulder surgery; (2) the post-surgical treatment recommendations consisted of ibuprofen and physical therapy, the latter of which plaintiff chose not to do; and (3) plaintiff's testimony that he only had difficulty lifting heavy items,[2] that he drove daily, and handled his personal needs, albeit with pain. The ALJ found that plaintiff undertakes "a wide range of independent daily activities which are inconsistent with work preclusive limitations."

21. I recognize that the ALJ was not required to have a medical opinion directly on point to arrive at his determination of plaintiff's RFC. I also recognize that the ALJ had discretion to find an RFC that fell somewhere between conflicting medical opinions, and that he could rely on non-medical evidence in doing so. However, the problematic medical evidence permeates this record, as the ALJ recognized, and the fact that plaintiff drives and can work through his pain in performing some daily activities is not enough to constitute substantial evidence for the ALJ's view. It was not as if plaintiff

---

[2] That is accurate as to plaintiff's testimony concerning his shoulder, this but omits other limitations about which plaintiff testified in detail.

7

acknowledged performing ballet or lifting weights. In other words, although non-medical evidence can be substantial, here, it is equivocal.

22. If the ALJ wants to find plaintiff is goldbricking or even just exaggerating based on specific inconsistencies between his subjective testimony, his conduct, and the medical records, and the record showed that, it would be fine, but that is not what the ALJ held. Rather, I am left with the conclusion that the ALJ arrived at his RFC finding, and particularly the restrictions to which plaintiff is subject, based on an impressionistic assessment of plaintiff's RFC rather than the medical and non-medical evidence in the record.

23. I therefore grant plaintiff's motion for judgment on the pleadings and deny the Commissioner's cross-motion. The case is remanded pursuant to 42 U.S.C. § 205(g) for an additional hearing. That hearing shall follow a referral for a consulting examination by an orthopedist, who shall have been provided with all the medical evidence and the testimony contained in this record.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
April 27, 2022

8